UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**BEVERLY J. GATEWOOD**                 )
**2364 Fairlane Drive**                 )
**Largo, FL  33771**                    )
                                        )
          Plaintiff,    )
                                        )
     v.                           ) Civil Action No.
                                        )
**ALBERTO R. GONZALES, ATTORNEY**       )
**GENERAL, UNITED STATES**              )
**DEPARTMENT OF JUSTICE**               )
**950 Pennsylvania Avenue, NW**         )
**Washington, DC  20530**               )
                                        )
          Defendant.    )
_____ )

## COMPLAINT

1. Plaintiff Beverly J. Gatewood brings this action for injunctive relief and damages based on the denial of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e, *et seq*. (hereafter "Title VII").  The Department of Justice, Federal Bureau of Investigation, (hereafter "FBI" or the "Agency") discriminated against Ms. Gatewood because of her race (African American).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(3), and 1343(a)(4), and 42 U.S.C. § 2000e-5.

3. Pursuant to 28 U.S.C. § 1391(e) and 42 U.S.C. § 2000e-5(f)(3), venue is proper in the District of Columbia which is the location where decision-making relevant to the allegations of discrimination took place, where Defendant has its principal

office and where, upon information and belief, the Plaintiff's employment records are located.

## PARTIES

4. Ms. Gatewood is presently employed with the Federal Bureau of Investigation, Tampa Division (hereafter, the "Agency" or "FBI"). The Agency discriminatorily denied her an opportunity to successfully complete Support Surveillance Group (hereinafter "SSG") Training because of her race, thereby negatively impacting her promotion and career opportunities.

5. Ms. Gatewood is an African-American female and she initiated an EEO charge with the Agency, filed an EEOC complaint and otherwise engaged in protected activities. Ms. Gatewood filed this Complaint after 180 days of administrative processing.

6. Defendant Alberto R. Gonzales is the Attorney General for the U.S. Department of Justice. The Attorney General is being sued in his official capacity as provided by law based on his executive responsibility for administering FBI personnel policies and his responsibility to enforce and to promote equal employment opportunity throughout the FBI. During the relevant time period, the FBI has employed over 500 employees.

## FACTS

7. On June 2, 2002, after being successfully interviewed by the Special Surveillance Group, Ms. Gatewood was selected to attend the SSG training program.

8. The SSG Training consisted of five components. Ms. Gatewood successfully completed four of the five components of training. The fifth component, Academics, was utilized by the Agency as pretext to deny Ms. Gatewood satisfactory completion of the SSG Training course.

9. After taking three academic exams as part of the Academic portion, Ms. Gatewood's average score was 73%. Specifically, Ms. Gatewood received scores of 62%, 63% and 92% on the Academic exam. Ms. Gatewood worked hard to improve her score after the first and second exam and succeeded in raising her exam score significantly by the third exam. However, despite her efforts, Ms. Gatewood was unable to obtain a higher average score than 73%.

10. Ms. Gatewood was informed by David Fluitt that she had failed the academic portion of the training by just two points, as an average score of 75% was needed to pass. Mr. Fluitt is one of the management officials responsible for overseeing the training of students that the FBI selects to attend the SSG Training.

11. Before informing Ms. Gatewood of his decision, Mr. Fluitt contacted members of the SSG Review Board for adjudication, Keith Patrick, Larry Knisley Jonathan Binnie, and/or others, all of whom, upon information and belief, are Caucasian males who work at FBI Headquarters in Washington, DC. These management officials, along with Mr. Fluitt, determined that Ms. Gatewood should be dismissed from SSG training.

12. By discharging Ms. Gatewood from the SSG training, these officials also determined that she would not be allowed the option of retaking the Academic exam to improve her average score. Ms. Gatewood was also informed that she

would not be able to re-apply or re-enter the SSG Training at a later time and that she would be barred from ever taking SSG training again. As a consequence, Ms. Gatewood had no choice but to return to the Tampa Field office.

13. Although part of the Academic exam consists of true/false and multiple choice, a component of the exam involves answering written questions. This portion of the exam allows for subjective interpretation by the SSG instructors. Given that Ms. Gatewood was a mere two points away from passing the Academic exam, the subjectivity and/or bias of the instructor(s) in grading her written questions may have contributed to her failing this portion of the SSG training. The SSG Review Board failed to take into account the subjective nature of the Academic exam in reaching its decision to discharge Ms. Gatewood from SSG training.

14. Ms. Gatewood was not given the same level of assistance, support and guidance from instructors and training officers as her non African-American counter-parts in the SSG Training course. For example, Mr. Fluitt, along with other training counselors, did not provide her adequate time or assistance in assuring that Ms. Gatewood was prepared for the academic exam. In particular, after receiving a 62% on her first academic exam, Ms. Gatewood asked an instructor and her class counselor for assistance. Both responded that they were too busy to assist her with her studies.

15. If she had been treated the same as other similarly situated Caucasian students, Ms. Gatewood would have received the instruction and/or additional tutoring she needed, thereby having a higher probability of improving her average score on the Academic exam.

16. After being rejected from the SSG Training, Ms. Gatewood appealed this decision to Keith Patrick, a management official in the Counterintelligence Division at FBI Headquarters and one of the members of the Special Surveillance Group responsible for dismissing Ms. Gatewood from the course. In her appeal to Mr. Patrick, Ms. Gatewood requested that she be allowed to retake the Academic exam for the SSG training program.

17. Mr. Patrick forwarded Ms. Gatewood's appeal to Margaret R. Buckley, Section Chief, FBI Headquarters. In August 2002, Ms. Buckley concurred in the decision to dismiss Ms. Gatewood from the SSG training. In doing so, Ms. Buckley denied Ms. Gatewood the opportunity to retake the exam, a consideration that was extended to other non African-American students in the training program.

18. Specifically, although Mr. Fluitt, as well as other FBI management officials, denied Ms. Gatewood the opportunity to retake the Academic exam, they permitted other non African-American students to retake examinations to ensure that these students passed the SSG Training. These students were given opportunities to retake exams beyond that which was authorized by the procedures and policies of the SSG Training course.

19. To this end, similar to Ms. Gatewood, another student, who was a Caucasian female, also failed a component of the SSG training. Specifically, this Caucasian female failed the Map Reading exam twice. Upon information and belief, the SSG Training guidelines do not allow students to take the Map Reading exam more than twice. In this instance, unlike Ms. Gatewood, Mr. Fluitt, as well as

other FBI management officials, permitted this Caucasian female to take the exam for a *third time*.

20. Furthermore, this student, unlike Ms. Gatewood, was provided intensive remedial instruction before her second and third attempt at the Map Reading exam.

21. Mr. Fluitt, as well as other FBI management officials, supposedly allowed this Caucasian female student to retake the Map Reading exam because the student, on her second exam, allegedly had failed by only one mile. In contrast, Ms. Gatewood was flatly denied to re-take the Academic exam segment when she, too, failed by a mere overall 2% average.

22. When initially confronted with this issue, Keith Patrick emphatically denied that the Caucasian student had been given the opportunity to take the Map Reading exam a third time. Mr. Patrick finally admitted that the Caucasian student was allowed to re-take the exam when he realized that Ms. Gatewood had first hand knowledge about the number of times the Caucasian student was allowed to take the exam.

23. Of significance is the fact that the SSG instructors initially informed the students that, if they failed the Map Reading test a second time, they would be dismissed from SSG training. Yet, not only was the Caucasian female student not dismissed from the program when she failed, but she was also given another chance to take the exam. Also noteworthy is the fact that Ms. Gatewood was able to pass the map test within the required number of times.

24. The SSG Review Board for adjudication, the same panel that was responsible for denying Ms. Gatewood the opportunity to retake the Academic exam, allowed

this Caucasian student to retake the Map Reading exam for a third time. The SSG Review Board exercises broad discretion in determining whether extenuating circumstances exist that may have adversely affected a student's performance such that the student is afforded another opportunity to successfully complete a failed exam. Students are routinely allowed to retake exams where the SSG Review Board determines that a student's capabilities and skill level were not accurately assessed.

25. The Caucasian student was able to pass the Map Reading exam on her third attempt. As a direct result of this opportunity, which was not afforded to Ms. Gatewood when she had similar difficulties with the Academic Exam, the Caucasian female was able to successfully complete the SSG Training. Upon information and belief, the Caucasian female student was not the only student treated more favorably and the SSG Review Board allowed a total of three Caucasian students, who failed the test twice, to take the test a third time. By permitting the students to retake the exam, upon information and belief, these students were able to successfully complete the SSG Training Course and, as a direct result, received promotions and other career enhancing opportunities.

26. Because of unequal and differential standards in the administration of the SSG Training course, Caucasian employees were given opportunities which were denied to African-American students, like Ms. Gatewood. As a direct consequence of this discriminatory conduct, Caucasian employees have been given preferential treatment which gives them an unfair advantage in completing

the SSG Training course which is denied or not afforded to similarly situated African-American students like Ms. Gatewood.

27. As a direct and proximate result of the discrepancies in standards based on race, Defendant denied Ms. Gatewood the opportunity to successfully complete the SSG training course. This has undermined and damaged Ms. Gatewood's professional career because dismissal from the SSG training program meant that Ms. Gatewood, who at the time was at the GS-6 level, was denied a promotion to a GS-9 position. Furthermore, had Ms. Gatewood completed the SSG course, after two years she would have had the opportunity to be promoted to a GS-11 pay level.

28. These adverse actions have hampered and interfered with Ms. Gatewood's ability to advance in her career and have significantly harmed her professional reputation. These and other adverse actions constitute a violation of her rights under Title VII of the Civil Rights Act of 1964.

29. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Ms. Gatewood has suffered grievous harm to her career and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of substantial past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities and loss of retirement savings and benefits.

30. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Ms. Gatewood additionally has suffered great

emotional distress, embarrassment, humiliation, pain and anguish, as well as damage to her professional career and reputation.

## EXHAUSTION OF REMEDIES

31. Ms. Gatewood exhausted all administrative requirements that apply to the processing of her complaint, including the filing of a formal complaint with the Agency's EEO office and an EEOC complaint.

## STATEMENT OF CLAIMS

**COUNT I:**    Race Discrimination in Violation of Title VII:

32. Ms. Gatewood re-alleges paragraphs 1-31 and incorporates them fully herein. Ms. Gatewood additionally alleges that Defendant, and/or agents or employees acting on its behalf, has discriminated against her on the basis of her race (African American) by denying her employment opportunities and subjecting her to adverse and disparate treatment.

33. Upon information and belief, Defendant has unfairly and unlawfully blocked Ms. Gatewood's promotion potential and perpetuated disparities in treatment between her and other similarly situated Caucasian students by denying her opportunities which were afforded to the Caucasian students.  Ms. Gatewood encountered a lack of support and guidance from training instructors and managers whereas similarly situated Caucasian students were given assistance which gave them unfair advantages over African-American students like Ms. Gatewood.  Ms. Gatewood was treated disparately in many aspects of the terms, conditions and

privileges of her employment. Ms. Gatewood further alleges that these acts violate Title VII of the Civil Rights Act of 1964, as amended, as well as the statutory provisions and regulations that specifically apply to the federal government as an employer.

34. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Ms. Gatewood has suffered grievous harm to her career and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities.

35. As a direct and proximate result of the intentional acts of Defendant and/or agents or employees acting on its behalf, Ms. Gatewood has suffered emotional distress, humiliation, pain and anguish, as well as damage to her professional career and reputation.

36. As a consequence of Defendant's actions, Defendant is liable to Ms. Gatewood for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests this Court to:

    A.    Enter judgment for Plaintiff against Defendant on all Counts;

    B.    Declare that the conduct of Defendant is in violation of Title VII of the Civil Rights Act of 1964, as amended;

    C.    Order the Agency to promote Ms. Gatewood with full back pay, front pay,

       future losses, loss of benefits, and other economic losses, including salary, benefits, and other entitlements retroactive to the date of any unlawful action found to have occurred in this case;

D.     Award Ms. Gatewood compensatory damages for the injuries and losses that she suffered in an amount to be proved at trial;

E.     Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Ms. Gatewood as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest;

F.     Order the Agency to refrain from taking any act of retaliation, including reassigning or relocating Ms. Gatewood because of this suit; and

G.     Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff requests a trial by a jury of her peers as to all claims set forth in this Complaint.

Respectfully submitted,

_____
Camilla C. McKinney
D.C. Bar No. 448776
Law Offices of Camilla C. McKinney
1100 Fifteenth Street, N.W., Suite 300
Washington, D.C. 20005
(202) 861-2934 (telephone)
(202) 514-9111 (facsimile)
Attorney for Plaintiff Beverly J. Gatewood